MARTORI BROS. DISTRIBUTORS, an Arizona partnership; O.P. Murphy Produce Company, Inc., dba O.P. Murphy & Sons, a Texas corporation; J.R. Norton Company, an Arizona corporation; and Mario Saikhon, Inc., a California corporation, Plaintiffs-Appellants-Cross-Appellees,

v.

Jyrl JAMES–MASSENGALE,* Chair; Gregory L. Gonot,* Board Member; Patrick Henning, Board Member; John McCarthy, Board Member; Jorge Carrillo, Board Member; Regional Director—El Centro; ** Regional Director—Salinas; *** Agricultural Labor Relations Board, State of California, Defendants-Appellees-Cross-Appellants.

Nos. 84–6137, 84–6274 and 84–6275.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1985.

Decided Jan. 30, 1986.

As Amended April 1, 1986.

---

* Jyrl James-Massengale and Gregory L. Gonot have been substituted for their predecessors Alfred Song and Jerome Waldie, respectively, pursuant to Fed.R.App.P. 43(c)(1).

** The Regional Director—El Centro has been substituted for former regional director David Arizmendi pursuant to Fed.R.App.P. 43(c).

*** The Regional Director—Salinas has been substituted for former regional director Lupe Martinez pursuant to Fed.R.App.P. 43(c).

Hersh & Stoll, Wayne A. Hersh, Charley M. Stoll, Alan J. Saxe, Newport Beach, Cal., for plaintiffs-appellants-cross-appellees.

Littler, Mendelson, Fastiff & Tichy, A Professional Corp., Robert K. Carrol, Scott A. Wilson, Samuel F. Hoffman, San Francisco, Cal., for Mario Sikhon, Inc.

Daniel G. Stone, Sol. of the Bd., Nancy C. Smith, Cathy Christian, Deputy Solicitors Agricultural Labor Relations Bd., Sacramento, Cal., for defendants-appellees-cross-appellants.

Before BARNES and REINHARDT, Circuit Judges, and SOLOMON,**** District Judge.

REINHARDT, Circuit Judge:

## I. BACKGROUND

### A. *Proceedings Below*

The appellants (the Employers) are all employers of agricultural laborers. The California Agricultural Labor Relations Board (the ALRB), in several unfair labor practice proceedings, held that all of the Employers violated the Agricultural Labor Relations Act of 1975 (the ALRA), Cal.Lab. Code §§ 1140–1166.3 (Deering 1976 & Supp.1985) by refusing to bargain in good faith with the union representing their employees. By way of remedy, the ALRB then ordered the employers to make their employees whole by paying them the difference between the compensation, including wages and fringe benefits, the employees actually received, and the compensation the ALRB determined the employees would have received had the Employers bargained in good faith.

While the various cases were apparently in differing postures before the ALRB and the California Court of Appeal,[1] the Employers filed an action in federal district court to enjoin the ALRB and certain of its officials[2] (hereafter collectively referred to as the ALRB) from enforcing the component of the "make-whole" order that deals with fringe benefits. The Employers also sought a declaration that California Labor Code § 1160.3, to the extent that it permits the ALRB to award the fringe benefit component of a "make-whole" order, is preempted by the Employee Retirement Income Security Act (ERISA), Pub.L. No. 93–406, 88 Stat. 832 (1974) (codified at 29 U.S.C. §§ 1001 *et seq.*), and violates the Contract Clause (art. I, § 10, cl. 1) and the Fifth Amendment of the United States Constitution. The Employers challenge only the legality of the part of the "make-whole" order that is calculated with reference to amounts paid in the form of fringe benefits. They do not challenge the component of the "make-whole" order that is computed on the basis of the amount paid as hourly wages. The district court granted summary judgment in favor of the ALRB, and the Employers appealed.[3]

We review the grant of summary judgment *de novo*, *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). Because it is agreed that there are no contested issues of fact, we need decide only whether the substantive law was correctly applied. *Lane v. Goren*, 743 F.2d 1337, 1339 (9th

---

**** The Honorable Gus J. Solomon, Senior United States District Court Judge for the District of Oregon, sitting by designation.

1. The record, unfortunately, is nowhere near as clear on this point as would be desirable.

2. The members of the ALRB, as well as the ALRB Regional Directors in Salinas and El Centro, were named as defendants.

3. The ALRB cross-appealed on the ground that the district court should have abstained from hearing this case. The parties have, however, instead treated abstention as an alternative ground for affirming the district court, and we do likewise.

Cir.1984). We hold that it was, and affirm the district court.

## B. *The Agricultural Labor Relations Act*

The ALRB has jurisdiction under the ALRA to investigate and adjudicate unfair labor practices committed by agricultural workers or their employers. *See* Cal.Lab. Code §§ 1160–1160.3. If the ALRB determines that the ALRA has been violated, it is authorized to issue remedial orders. Cal. Lab.Code § 1160.3. Within 30 days after the ALRB issues a final order, any aggrieved person may file a petition for review with the California Court of Appeal. Cal. Lab.Code § 1160.8. The ALRB cannot file a petition for review, and once a petition for review has been filed, the ALRB cannot move in Superior Court, as described *infra*, to enforce its order. Cal.Lab.Code § 1160.-8; *Tex-Cal Land Management, Inc. v. ALRB*, 24 Cal.3d 335, 348 n. 8, 595 P.2d 579, 587 n. 8, 156 Cal.Rptr. 1, 8 n. 8 (1979). The Court of Appeal, when acting on a petition for review, may modify, enforce, or set aside in whole or in part, the order of the ALRB. Cal.Lab.Code § 1160.8. The Court of Appeal may also summarily deny the petition for review. *Tex-Cal Land Management*, 24 Cal.3d at 351, 595 P.2d at 588, 156 Cal.Rptr. at 10. When considering the petition for review, the Court of Appeal must give conclusive effect to the ALRB's findings of fact if they are supported by substantial evidence on the record considered as a whole. Cal.Lab.Code § 1160.8.

If, after 30 days from the entry of a final order by the ALRB, no petition for review has been filed and the order has not been complied with, then the ALRB may apply to the California Superior Court for en-

forcement of its order. Cal.Lab.Code § 1160.8. If the Superior Court determines that the order was issued pursuant to ALRB procedures and that the order has not been complied with, then the Superior Court is to enforce the order without reviewing its merits. Cal.Lab.Code § 1160.8. Furthermore, if the Court of Appeal should summarily deny a petition for review, and the ALRB's order is not then complied with, the ALRB must request the Superior Court to enforce the order. *Tex-Cal Land Management*, 24 Cal.3d at 352, 595 P.2d at 589, 156 Cal.Rptr. at 11.[4]

When the ALRB finds that an employer has refused to bargain, it can require the employer "to take affirmative action, including ... making employees whole, when the [ALRB] deems such relief appropriate for loss of pay resulting from the employer's refusal to bargain." Cal.Lab.Code §§ 1160.3. The purpose of such a "make-whole" award is "to remedy [an employer's] unfair labor practice by placing the employees in the economic position they would likely have been in but for that unfair labor practice." *Robert H. Hickam*, 9 ALRB No. 6 at p. 2 (1983). The ALRB has determined that as used in section 1160.3, "pay" refers "not only to cash wages paid directly to the employee, but also [to] all other benefits, capable of a monetary calculation, which flow to the employee by virtue of the employment relation." *Adam Dairy dba Rancho Dos Rios*, 4 ALRB No. 24 at p. 6 (1978). Thus, when the ALRB concludes that a "make-whole" remedy is appropriate, it estimates the total value of the compensation package that the employees would have received had their employers bargained in good faith, and then subtracts the total value of the

---

**4.** It will be noted that even though the ALRA is modeled on the National Labor Relations Act (NLRA), *see Tex-Cal Land Management*, 24 Cal.3d at 345, 595 P.2d at 584, 156 Cal.Rptr. at 6, the provisions for enforcement of an ALRB order are rather different from those concerning orders of the NLRB. When the NLRB wants to enforce an order, it simply files a petition in the Court of Appeals, and the order is reviewed under a substantial evidence standard. NLRA § 10(e) (29 U.S.C. § 160(e)). The ALRB, however, can only move to enforce an order if, after

30 days from the entering of the order, no employer, union, or other aggrieved person has filed a petition for review, and then the ALRB must file in the Superior Court, which can review the procedures the ALRB followed, but not the merits of the order. Cal.Lab.Code § 1160.8. The provisions for the filing of a petition for review by an aggrieved party, however, are very similar under both the NLRA and the ALRA. *See* NLRA § 10(f) (29 U.S.C. § 160(f)); Cal.Lab. Code § 1160.8.

compensation package the employees actually received, to determine the amount of the "make-whole" award. *Adam Dairy; Robert H. Hickam.* The employer is then ordered to make a one-time, lump-sum payment in the amount of the award to the affected employees.[5]

While various methods have been used in the past to estimate the total value of the compensation package the employees would have received had their employer bargained in good faith, *see, e.g., Adam Dairy, Robert H. Hickam, supra,* the method currently used by the ALRB is set out in *J.R. Norton Co.,* 10 ALRB No. 42 (1984). The ALRB first estimates a cash wage rate by examining actual contracts that are deemed comparable to the contract that might have been reached had the employer bargained in good faith. Then, based on these comparable contracts, it determines which fringe benefits might have been included had a contract been reached, and the cash value of these benefits is added to the cash wage rate to determine the total compensation package that would have been reached had the employer bargained in good faith. The value of the total compensation actually paid is then subtracted, to yield the amount of the "make-whole" award.[6]

## II. JURISDICTION

■ The district court had subject matter jurisdiction in this action. The Employers are seeking to enjoin the enforcement of various ALRB orders on the grounds they are preempted by Federal law and are unconstitutional. Federal questions are thus presented and jurisdiction exists under 28 U.S.C. § 1331. *See Champion International Corp. v. Brown,* 731 F.2d 1406, 1407–08 (9th Cir.1984); *Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983).

## III. ABSTENTION

■ The ALRB contends that even though the district court may have had jurisdiction to hear the case, it should have abstained from so doing under the doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[7] In analyzing this claim, we begin with the basic proposition that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). Under the *Younger* doctrine, a federal court must abstain whenever there is an ongoing state judicial proceeding, the proceeding concerns vital state interests, and there is an adequate opportunity to present the federal claims in the state proceedings. *Id.* at 2328; *Middlesex Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Abstention will not be required unless the "state court proceedings [have

---

5. While a "make-whole" order does require the employer to continue to make its employees whole until such time as it bargains in good faith, the practice of the ALRB appears to be to fix specific beginning and ending dates and calculate the "make-whole" amount for that period. The award is the final award for that period. Then, if it is later determined that the employer continued to act in bad faith, a new ending date is fixed, and a new award is made, covering the period from the first ending date to the new ending date. Thus, a lump-sum award is made for each period. *See J. R. Norton Co.,* 10 ALRB No. 42 at p. 8 n. 8 (1984); *Adam Dairy, supra,* at pp. 17–18 (ALRB rejects suggestion that employers make on-going payments indefinitely); *Robert H. Hickam,* Case No. 4 ALRB No. 73, Decision of the Administrative Law Officer at p. 14 (Nov. 19, 1981).

6. In some cases the calculations can be significantly more complex. *See, e.g., Robert H. Hickam, J.R. Norton Co., supra.* The essential outlines of the ALRB method, however, are set forth above.

7. Although the ALRB did not raise the issue of *Younger* abstention below, it is appropriate for this court to decide the issue because there was no prejudice to the Employers from the delay in raising the issue. *Bellotti v. Baird,* 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976). The ALRB has not pursued its claim, raised in the district court, that abstention was appropriate under the doctrine of *Railroad Comm'n v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

been] initiated before any proceedings of substance on the merits have taken place in the federal court." *Hawaii Housing Authority,* 104 S.Ct. at 2328; *Adultworld Bookstore v. City of Fresno,* 758 F.2d 1348, 1350 (9th Cir.1985).[8]

■ Because the proceedings before the ALRB are not judicial proceedings, the district court was not required to abstain in deference to the ALRB.[9] *Hawaii Housing Authority,* 104 S.Ct. at 2328 (federal court should not abstain in favor of administrative proceedings); *Middlesex Ethics Committee,* 457 U.S. at 433–34, 102 S.Ct. at 2522 (New Jersey bar disciplinary proceedings are judicial in nature and abstention is therefore appropriate); *Miller v. Washington State Bar Association,* 679 F.2d 1313 (9th Cir.1982) (federal court should not abstain in favor of administrative bar disciplinary proceedings).[10]

■ The question thus becomes whether the district court was required to abstain because petitions for review were pending before the California Court of Appeal. The proceedings before the Court of Appeal clearly are judicial in nature and the Employers have a full opportunity to raise their federal claims before the Court of Appeal. The only remaining concern is whether the proceedings concern "vital state interests" within the meaning of *Younger* and its progeny.

The Supreme Court has not yet provided any type of analytical framework for determining whether, for abstention purposes, a vital state interest is present. An examination, however, of the cases in which this court or the Supreme Court has held that a vital state interest is present shows that the cases fall into three categories. First, there are those cases in which the state proceeding was a criminal proceeding. *See, e.g., Younger, supra; Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Kinney v. Lenon,* 447 F.2d 596 (9th Cir.1971) (juvenile proceedings); *Rivera v. Freeman,* 469 F.2d 1159 (9th Cir.1972) (same). The second category consists of those cases in which the state proceeding was in aid of or closely related to a criminal proceeding. For example, in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Supreme Court held that a state nuisance abatement action against a theater alleged to be showing criminally obscene movies was sufficiently in aid of and related to a criminal prosecution that abstention was appropriate. We relied on *Huffman* in holding that an action for unfair and deceptive trade practices brought by the state under a consumer protection act was sufficiently related to or in aid of the state's criminal law. *Williams v. Washington,* 554 F.2d 369 (9th Cir.1977). Similarly, in *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the Supreme Court held that the federal courts should abstain in favor of a civil suit brought by the state to recover welfare benefits fraudulently received, noting that the state could have filed criminal charges instead of the civil claim. We followed *Trainor* in ordering abstention in favor of a state receivership

---

**8.** It appears that the on-going ALRB proceedings, as well as the petitions for review before the California Court of Appeal, were already pending before any proceedings of substance had taken place in the district court. *See supra* note 1.

**9.** Even if we were to hold that the ALRB proceedings were judicial in nature, abstention would still not be appropriate because the Employers cannot raise their federal claims before the ALRB. Article 3, section 3.5 of the California Constitution prohibits the ALRB from declaring that a state statute is unconstitutional or preempted by federal law, unless an appellate court has already so held.

**10.** In *Miller* we held that Washington state bar proceedings were administrative in nature because no appeal to the Washington Supreme Court was possible and therefore that court could not consider the attorney's constitutional challenges. 679 F.2d at 1316. By contrast, in the New Jersey state bar proceedings that were held to be judicial in nature in *Middlesex County Ethics Com'n,* the New Jersey Supreme Court was *required* to consider an attorney's constitutional challenges. 457 U.S. at 435–36 & n. 15, 102 S.Ct. at 2522–23 & n. 15.

involving the investigation and regulation of fraud in charitable trusts. *Worldwide Church of God v. California,* 623 F.2d 613 (9th Cir.1980) (per curiam). Likewise, in *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Supreme Court held that a suit by the state to temporarily remove children from the custody of their parents pending a determination of whether the children were being abused was sufficiently related to and in aid of criminal proceedings that abstention was appropriate.

The third category where abstention has been found appropriate consists of those cases where the state proceedings involve the fundamental operation of the state's court system. Thus, in *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Supreme Court ordered abstention in favor of a state court contempt proceeding, pointing out that "[t]he contempt power lies at the core of the administration of a State's judicial system." *Id.* at 335, 97 S.Ct. at 1217. *See Henkel v. Bradshaw,* 483 F.2d 1386 (9th Cir.1973) (abstention in favor of state contempt proceedings). Similarly, both this court and later the Supreme Court have held that abstention is appropriate when a state bar disciplinary action is judicial in nature. *See Middlesex County Ethics Committee, supra; Rosenthal v. Carr,* 614 F.2d 1219 (9th Cir.), *cert. denied,* 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980). The importance of professional, ethical conduct by attorneys to the functioning of the court system has been repeatedly emphasized by the courts. *See, e.g., Middlesex County Ethics Committee,* 457 U.S. at 434, 102 S.Ct. at 2522 (abstention issues); *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957); *Erdmann v. Stevens,* 458 F.2d 1205, 1209 (2d Cir.), *cert.*

*denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972) (abstention issues).[11]

Clearly, the Employers' petitions for review before the California Court of Appeal are not criminal proceedings, nor do they involve the fundamental operation of California's court system. The petitions for review are civil proceedings; because California Labor Code § 1160.9 provides that chapter 6 of the ALRA (§§ 1160–1160.9) is "the exclusive method of redressing unfair labor practices" and chapter 6 contains no criminal provisions at all, we simply cannot say that a petition for review of an ALRB decision is in aid of or related to criminal proceedings. Accordingly, a petition for review does not fall into any of the three categories in which *Younger* abstention has been held to be appropriate.

We have made it clear that our "unflagging obligation" to exercise federal jurisdiction precludes expansion of the *Younger* doctrine except in extraordinary circumstances. *Miofsky v. Superior Court,* 703 F.2d 332, 338 (9th Cir.1983). The state's interest under the ALRA would seem to be the quite common interest which underlies any regulatory statute enacted by a state with the purpose of improving the economic conditions of its residents. Because this interest is so common, we are constrained to hold that it is not anywhere as "vital" as the state's interest in its criminal justice system or the fundamental operation of its court system, and thus that it is not sufficiently "vital" to justify an expansion of the *Younger* doctrine. *See Champion International Corp. v. Brown,* 731 F.2d 1406 (9th Cir.1984) (Montana did not have vital state interest in enforcing age discrimination laws). A contrary holding would strip the phrase "extraordinary circumstances" of meaning and would readily lead to a rule that *Younger* abstention is required any

**11.** It may also be possible to characterize the bar discipline cases as cases involving proceedings related to or in aid of criminal proceedings. While the Supreme Court in *Middlesex County Ethics Committee* explicitly refused to decide whether New Jersey's disciplinary proceedings were criminal, quasi-criminal, or civil in nature, *see* 457 U.S. at 433 n. 12, 102 S.Ct. at 2522 n. 12, the Court has in other contexts referred to bar disciplinary proceedings as quasi-criminal, *see, e.g., In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968), and at least some of the circuit courts that have held that abstention is appropriate have emphasized the quasi-criminal nature of bar disciplinary proceedings. *See, e.g., Erdmann, supra.*

time *any* state interest is present. We cannot violate our clear obligation to exercise federal jurisdiction. Accordingly we hold that the district court was correct in refusing to abstain.[12]

## IV. ERISA PREEMPTION

We turn now to the principal question before us—whether the ALRB's order is preempted because the "make-whole" remedy is based on the entire compensation package received by farm workers rather than solely on the hourly wages they receive.

■ Section 514(a) of ERISA (29 U.S.C. § 1144(a) (1982)) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[13] "State law" is a defined term and consists of "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." § 514(c)(1). "State" is also a defined term and includes "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." § 514(c)(2). Thus, not only section 1160.3 of the California Labor Code, but also the ALRB interpretations of that section constitutes "State law." *See, e.g., Jung v.*

*FMC Corp.,* 755 F.2d 708 (9th Cir.1985), *Scott v. Gulf Oil Co.,* 754 F.2d 1499 (9th Cir.1985). We must therefore determine whether California Labor Code § 1160.3, as interpreted and implemented by the ALRB, is preempted by ERISA.[14] Section 1160.3 is preempted if it both "relate[s]" to an ERISA plan and "purport[s] to regulate, directly or indirectly" ERISA plans. *See Lane,* 743 F.2d at 1339; *Rebaldo v. Cuomo,* 749 F.2d 133, 137 & n. 1 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).[15]

We have recognized that while the scope of section 514(a) is broad, it is not all-encompassing. *See, e.g., Scott,* 754 F.2d at 1504; *Lane,* 743 F.2d at 1340. As the Supreme Court noted, "Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Furthermore, "[w]e must also presume that [in enacting ERISA] Congress did not intend to pre-empt areas of traditional state regulation." *Metropolitan Life Insurance Co. v. Massachusetts,* — U.S. —, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

The state laws that have been found to be preempted by section 514(a) because they "relate" to ERISA plans fall into four

---

**12.** We also note that a number of circuits have held that *Younger* abstention is not appropriate when the state is not the plaintiff in the state court action. *See, e.g., New Jersey Education Association v. Burke,* 579 F.2d 764 (3d Cir.), *cert. denied,* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978); *Johnson v. Kelly,* 583 F.2d 1242 (3d Cir.1978); *Harris v. Pernsley,* 755 F.2d 338 (3d Cir.1985); *Puerto Rico International Airlines v. Silva Recio,* 520 F.2d 1342 (1st Cir.1975); *Henry v. First National Bank,* 595 F.2d 291 (5th Cir. 1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *Crawley v. Hamilton County Commissioners,* 744 F.2d 28 (6th Cir. 1984); *Anderson v. Babb,* 632 F.2d 300, 306 n. 3 (4th Cir.1980). *But see Etlin v. Dalton,* 673 F.2d 1309 (4th Cir.1981) (mem.), *cert. denied,* 458 U.S. 1112, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982). Of course, in *Juidice, supra,* the state was not a party to the state proceedings at all, but the Supreme Court was careful to point out that the private litigant who initiated the state contempt proceedings was directly furthering

the state's interest in the orderly operation of its courts. 430 U.S. at 335–36 & n. 12, 97 S.Ct. at 1217 & n. 12. We need not rely here on the ground that the state was not the plaintiff.

**13.** None of the parties contends that the employee benefit plans involved in this case are exempted from ERISA under § 4(b) (29 U.S.C. § 1003(b)) and thus not covered by the preemption clause of § 514(a).

**14.** None of the parties contends that any of the exceptions to § 514(a) listed in § 514(b) applies in this case.

**15.** *See also Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 329 (2d Cir.1982), *aff'd mem. sub nom. Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983) (state law must both "relate to" and "purport to regulate" ERISA plans before it is preempted); *Sasso v. Vachris,* 66 N.Y.2d 28, 484 N.E.2d 1359, 494 N.Y.S.2d 856 (1985) (same).

categories. First, laws that regulate the type of benefits or terms of ERISA plans.[16] Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans.[17] Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans.[18] Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.[19] The principle underlying all of these decisions would appear to be that the

16. *See, e.g., Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (pregnancy benefits required); *Standard Oil Co. v. Agsalud,* 633 F.2d 760 (9th Cir.1980), *aff'g* 442 F.Supp. 695 (N.D.Cal.1977), *aff'd mem.* 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981) (alcohol and drug abuse treatment benefits required); *Pervel Industries v. Connecticut Comm'n on Human Rights,* 468 F.Supp. 490 (D.Conn.1978), *aff'd mem.* 603 F.2d 214 (2d Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980) (pregnancy benefits required); *Dawson v. Whaland,* 529 F.Supp. 626 (D.N.H.1982) (health benefits required); *General Split Corp. v. Mitchell,* 523 F.Supp. 427 (E.D.Wis.1981) (conversion and other benefits required); *St. Paul Electrical Workers Welfare Fund v. Markman,* 490 F.Supp. 931 (D.Minn.1980) (various medical benefits required); *but see also Metropolitan Life Ins. Co. v. Massachusetts,* — U.S. —, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) ("insurance exception" in § 514(b)(2)(A) prevents preemption of state law generally requiring insurance companies to offer certain medical benefits).

*See further Davis v. Line Construction Benefit Fund,* 589 F.Supp. 146 (W.D.Mo.1984) (ERISA plan can properly require beneficiary to assign rights of recovery to plan as precondition for receipt of benefits even though state law prohibits such assignment); *Hunt v. Sherman,* 345 N.W.2d 750 (Minn.1984) (same).

17. *See, e.g., Standard Oil Co. v. Agsalud,* 633 F.2d 760 (9th Cir.1980), *aff'g* 442 F.Supp. 695 (N.D.Cal.1977), *aff'd mem.* 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981) (reporting requirements); *Hewlett Packard Co. v. Barnes,* 571 F.2d 502 (9th Cir.1978), *aff'g* 425 F.Supp. 1294 (N.D.Cal.1977), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978) (funding & disclosure requirements); *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323 (2d Cir. 1982), *aff'd mem. sub nom. Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983) (funding requirements); *St. Paul Electrical Workers Welfare Fund v. Markman,* 490 F.Supp. 931 (D.Minn.1980) (reporting requirements); *Azzaro v. Harnett,* 414 F.Supp. 473 (S.D.N.Y.1976), *aff'd mem.* 553 F.2d 93 (2d Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977) (ERISA prevents state insurance department from inquiring into pension benefit status of participant); *National Carriers' Conference Comm. v. Heffernan,* 454 F.Supp. 914 (D.Conn.1978) (state cannot tax ERISA plans because taxation is a form of regulation).

18. *See, e.g., Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (use of setoff/integration method in computing benefits); *Employee Benefits Comm. v. Pascoe,* 679 F.2d 1319 (9th Cir.1982) (same); *Kapuscinski v. Plan Administrator,* 658 F.2d 427 (6th Cir.1981) (same).

19. *See, e.g., Ellenburg v. Brockway, Inc.,* 763 F.2d 1091 (9th Cir.1985) (state law claim of breach of implied covenant of good faith and fair dealing); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499 (9th Cir.1985) (ERISA preempts certain state common-law claims for breach of contract, violation of public policy, breach of duty to act fairly and in good faith, breach of fiduciary duty, and fraud); *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), *cert. denied,* — U.S. —, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (state common-law claims for breach of contract, estoppel, fraud, and deceit); *Winterrowd v. David Freedman & Co.,* 724 F.2d 823 (9th Cir.1984) (punitive damages); *Lafferty v. Solar Turbines Int'l,* 666 F.2d 408 (9th Cir.1982) (common law breach of contract claim); *Holland v. Burlington Industries,* 772 F.2d 1140 (4th Cir. 1985), (ERISA preempts state law regulating time of payment of employee benefits, and various common law claims); *Gilbert v. Burlington Industries,* 765 F.2d 320 (2d Cir.1985) (same); *Authier v. Ginsberg,* 757 F.2d 796 (6th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985) (ERISA preempts state-law claim for wrongful discharge where public policy violated by discharge was established by ERISA); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (state claim for tortious interference with contractual relations); *Provience v. Valley Clerks Trust Fund,* 163 Cal. App.3d 249, 209 Cal.Rptr. 276 (1984) (various state tort claims); *Baker v. Caravan Moving Corp.,* 561 F.Supp. 337 (N.D.Ill.1983) (ERISA preempts state law penalties for failure to contribute to employee benefit plans); *Trustees of Sheet Metal Workers' Welfare Fund v. Aberdeen Blower & Sheet Metal Workers, Inc.,* 559 F.Supp. 561 (E.D.N.Y.1983) (same); *Commonwealth v. Federico,* 383 Mass. 485, 419 N.E.2d 1374 (1981) (same).

*But see also Dedeaux v. Pilot Life Ins. Co.,* 770 F.2d 1311 (5th Cir.1985) ("insurance exception" of § 514(b)(2)(A) prevents preemption of common-law claims for breach of contract, breach of fiduciary duty, and fraud with respect to insurance-funded ERISA plan); *Sasso v. Va-*

state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is "part of the administration of an employee benefit plan"; that is, the state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefit plans. *See Scott*, 754 F.2d at 1505.

■ The Employers' first argument in support of a finding of preemption is that the portions of the ALRB's "make-whole" awards that are calculated by examining fringe benefits in comparable contracts alter the terms of the Employers' already existing ERISA plans. This argument is factually incorrect. ALRB "make-whole" orders do not require any change whatsoever in existing ERISA plans. Nor does the money the Employers are ordered to pay to their employees under the terms of the order come out of ERISA trust funds. A "make-whole" order is no more than an order to the Employers to pay damages to their employees; it is no different from any other award of damages.

■ The Employers' second argument in support of preemption is that the portions of the ALRB's "make-whole" awards that are calculated by examining fringe benefits in comparable contracts are preempted because they create new ERISA plans. It is difficult to see how the making of one-time lump sum payments could constitute the establishment of a plan. As discussed above, a "make-whole" remedy is an award of damages designed to put workers in approximately the same economic position they would have been in had their employer bargained in good faith. This economic position can be determined only after determining the total compensation the workers would have received after good-faith bargaining. The total compensation paid to any worker in normal circumstances may be paid partly in wages and partly in fringe benefits. The specific mix of wages and fringe benefits is irrelevant for the purpose of assessing damages. Regardless of the particular mix, the total value of the compensation package remains the same; if the amount of fringe benefits is greater, the amount of wages will be lesser, and vice-versa. When the ALRB decides to issue a "make-whole" award, it is only the total amount of compensation that matters. The ALRB does not order the payment of fringe benefits; rather, it requires the payment of damages in an amount equal to the difference between the estimated total value of the compensation package the employees should have received and the amount of compensation they actually received. Because the ALRB is not ordering the payment of fringe benefits, there is not even a colorable argument that it has created new ERISA plans, and the Employers' second argument must fail.

Our conclusion in this regard is supported by our prior cases of *Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group*, 721 F.2d 654 (9th Cir.1983), and *Scott v. Gulf Oil Co.*, 754 F.2d 1499 (9th Cir.1985), in which we held that damages awarded for injuries suffered due to wrongful exclusion from an ERISA plan were not benefits under an ERISA plan. In the case before us, the agricultural workers are receiving damages for wrongful failure to pay the proper total compensation; *a fortiori* these damages are not ERISA benefits.

■ The Employers' third argument in support of a finding of preemption is that

---

chris, 66 N.Y.2d 28, 484 N.E.2d 1359, 494 N.Y.S.2d 856 (1985) (ERISA does not preempt state law making shareholders liable to employees for corporate employer's failure to pay amounts owing to employees, because law "relates to" shareholder immunity, not ERISA plans).

We note that many of the Ninth Circuit cases cited in this note rely on *Russell v. Massachusetts Mutual Life Ins. Co.*, 722 F.2d 482 (9th Cir.1983), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). We have

vacated our opinion in *Russell*, however, 778 F.2d 542 (9th Cir.1985), and thus it no longer has precedential value. *See County of Los Angeles v. Davis*, 440 U.S. 625, 634 n. 6, 99 S.Ct. 1379, 1384 n. 6, 59 L.Ed.2d 642 (1979). *See also Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 211 (7th Cir.1985) (after Supreme Court decision in *Russell*, the extent of preemption of state common-law claims by ERISA-plan beneficiaries is "a difficult and unresolved question.").

the portions of the ALRB's "make-whole" awards that are calculated by examining fringe benefits in comparable contracts are preempted because the calculations are made by reference to existing ERISA plans. We do not believe that Congress intended the "relates to" clause of section 514(a) to be read so broadly. Such an expansive reading of ERISA would lead to absurd results. For example, if the victim of an accident was unable to work and sought damages for lost income, under the Employers' theory the damages could be measured only by lost wages, and could not include any amount attributable to the loss of fringe benefits. We seriously doubt that Congress intended to alter so drastically the method of calculating damages in state personal injury suits when it enacted pension reform legislation designed to benefit employees. Moreover, even if we concluded that ALRB "make-whole" orders do affect ERISA plans, we would not invalidate them. Rather we would conclude that such orders affect the plans in too remote, tenuous, and peripheral a manner to justify a holding that they "relate to" the plans. Our conclusion that ERISA does not prevent the calculation of damages for lost compensation by referring to existing ERISA plans is buttressed by the holding of *Scott* and *Freeman* that damages suffered because of wrongful exclusion from an ERISA plan can properly be calculated by examining actual ERISA plans. Thus, we reject the Employers' third argument.

Accordingly, we hold that California Labor Code § 1160.3 does not "relate to any employee benefit plan."

We have held, as has the Second Circuit, that under section 514(c)(2) a state law must also "purport to regulate" ERISA plans before it can be held to be preempted. *Lane*, 743 F.2d at 1339; *Rebaldo*, 749 F.2d

at 137 & n. 1.[20] This second prong of the preemption test seems to have been overshadowed by the "relates to" test found in section 514(a), although the two prongs are both important. *See Lane*, 743 F.2d at 1339; *Rebaldo*, 749 F.2d at 137 ("purport to regulate" test imposes a limit on the reach of the preemption clause in ERISA). As a logical matter, if a state law does not "relate to" ERISA plans, it cannot "purport to regulate" them, for "relates" includes, but is much broader than, "purports to regulate." Thus, we conclude that, *a fortiori*, California Labor Code § 1160.3 does not "purport to regulate" ERISA plans.

We see then, that neither of the two preconditions to preemption is satisfied in this case. This conclusion, drawn from the words of the statute, is reinforced by an examination of the legislative history of ERISA. As we have pointed out, Congress in enacting ERISA was mainly concerned with two abuses: "mismanagement of funds accumulated to finance [employee] benefits, and failure to pay employees the benefits promised." *California Hospital Association v. Henning*, 770 F.2d 856, 859 (9th Cir.1985). Congress was not concerned, when it enacted ERISA, with the multitude of problems surrounding employers who refused to bargain in good faith.

We cannot ignore the reality that when Congress enacted ERISA, "federal exclusivity [was] a corollary of regulatory coverage, not an independent statutory goal." *California Hospital Association*, 770 F.2d at 861. ERISA does not purport to regulate the broad spectrum of unlawful employment practices that may be committed by employers: thus ERISA does not prevent a state agency from including in its "make-whole" awards sums calculated with reference to fringe benefits.

---

**20.** The structure of § 514 is somewhat unusual. Section 514(a) preempts "State laws" that "relate to" ERISA plans. Section 514(c)(1) defines "State law" as the "laws ... of any State." Section 514(c)(2) defines a "State" to include "a State, any political subdivisions thereof, or any agency or instrumentality of either, which pur-

ports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." Thus, as both *Lane* and *Rebaldo* expressly held, in order for a law to be a "State law," the law must "purport to regulate" ERISA plans.

## V. CONTRACT CLAUSE

■ The Employers argue that U.S. Const. Art. I, § 10, cl. 1, which provides that "No State shall ... pass any Law impairing the Obligation of Contracts," bars the enforcement of a "make-whole" remedy on the ground that the "make-whole" award would alter the terms of their already existing ERISA plans. As we have shown above, the "make-whole" award does not alter the terms of the existing ERISA plans and is not itself an employee benefit plan. Thus, there is no impairment of the employers' ERISA plans and no violation of the Contract Clause. *See Northwestern National Life Insurance Co. v. Tahoe Regional Planning Agency*, 632 F.2d 104, 106 (9th Cir.1980).

## VI. FIFTH AMENDMENT—TAKINGS

■ The Employers' argument that enforcement of a "make-whole" remedy constitutes a taking of their assets and thus violates the just compensation clause of the Fifth Amendment borders on the frivolous. If taken seriously, the Employers' position would compel the dismantling of our civil litigation system since damages could no longer be awarded by our courts.

## VII. CONCLUSION

Because we conclude that the district court had jurisdiction and properly refused to abstain, and that neither ERISA, the Contracts Clause, nor the Fifth Amendment prevents the ALRB from calculating a portion of its "make-whole" awards on the basis of benefits afforded under existing ERISA plans, we affirm the district court's grant of summary judgment to the defendants.

AFFIRMED.

