948 F.2d 1293
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Wallace ODNEAL, Plaintiff-Appellant,
v.
PACIFIC GAS AND ELECTRIC COMPANY; Pacific Gas and Electric
Company Retirement Plan, Defendants-Appellees.
 No. 90-15833.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 19, 1991.
Decided Dec. 2, 1991.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Wallace Odneal appeals the district court's grant of summary judgment in favor of Pacific Gas and Electric Company and Pacific Gas and Electric Company Retirement Plan (collectively "PG & E").[1] The district court held that Odneal's state law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 301-309, 441, 1001-1461. The district court rejected on the merits Odneal's claims that PG & E had violated its fiduciary duty under ERISA or interfered with Odneal's protected rights in violation of ERISA. We affirm.
 
 
 3
 * Wallace Odneal was a long-term employee of PG & E. In early 1986, he was contemplating retirement. Odneal heard rumors floating around PG & E that management was considering varying methods of "downsizing" the workforce, including possible implementation of an early retirement incentive program. During the summer and early fall of 1986, PG & E's management issued several statements indicating that an early retirement plan might be instituted and assuring its employees that all facts would be presented "openly and candidly."
 
 
 4
 According to Odneal, even though PG & E's senior management was considering such a plan, PG & E's personnel representative and personnel manager in his division told him during the summer of 1986 that there would be no early retirement program. Odneal, convinced that there would be no such program, decided to retire. On September 30 or October 1, 1986, Odneal gave written notice to PG & E of his intent. Pursuant to PG & E policy, his retirement was scheduled for the first day of the following month. Thus, Odneal's retirement was effective November 1, 1986.
 
 
 5
 On December 17, 1986, PG & E amended its retirement plan to adopt the Voluntary Retirement Incentive Program ("VRI"). Because the decision to proceed with the VRI had been made in November, PG & E made the plan retroactive for employees retiring after November 1.[2] Odneal was therefore not eligible to participate in the program.
 
 II
 
 6
 We review the district court's grant of summary judgment de novo. Stahl v. Tony's Bldg. Materials, Inc., 875 F.2d 1404, 1406 (9th Cir.1989). Summary judgment is proper if there are no genuine issues of material fact and the party for whom summary judgment was granted is entitled to judgment as a matter of law. Harm v. Bay Area Pipe Trades Pension Plan Trust Fund, 701 F.2d 1301, 1303 (9th Cir.1983). We resolve all conflicts in the evidence in favor of Odneal, the party against whom summary judgment was granted. Id.
 
 III
 
 7
 The district court held that Odneal's state law breach of contract, fraud, and negligent misrepresentation claims were preempted by ERISA. With few exceptions, ERISA preempts all state laws which "relate to" an employee benefit plan covered by ERISA. ERISA § 514, 29 U.S.C. § 1144; Scott v. Gulf Oil Corp., 754 F.2d 1499, 1501 (9th Cir.1985). "A law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, 463 U.S. 85, 96-97 (1983). "Congress used the words 'relate to' in § 514(a) in their broad sense." Id. at 98; see also Ingersoll-Rand Co. v. McClendon, 111 S.Ct. 478, 484 (1990) (rejecting argument that state law must "purport to regulate" ERISA plans in order to "relate to" ERISA).
 
 
 8
 Odneal correctly notes that "[t]he relevant inquiry is whether there was an ERISA covered benefit plan, to which defendant's wrongful conduct related at the time the conduct occurred." ERISA does not preempt state law claims which arise out of actions not relating to an existing ERISA plan. Thus, Odneal asserts that ERISA does not preempt his state law claims because the VRI did not come into effect until November 1986, after the alleged misrepresentations occurred.
 
 
 9
 We agree with the district court, however, that the VRI was merely an amendment to an existing plan and not an entirely new plan. Thus, Odneal's citations to cases holding that ERISA does not preempt state law claims based on misrepresentations occurring before an ERISA-qualified plan has been adopted are inapposite. See, e.g., Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987) (state law requiring severance pay in event of plant closure not preempted because it does not relate to a benefit plan); Martori Bros. Dists. v. James-Massengale, 781 F.2d 1349 (9th Cir.), modified, 791 F.2d 799 (9th Cir.) ("make whole" order issued by state regulatory agency did not alter existing ERISA plans and therefore was not preempted merely because employer ordered to repay value of lost pension benefits), cert. denied, 479 U.S. 949 (1986), disapproved on other grounds, Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 627-28 n. 2 (1986).
 
 
 10
 In Lee v. E.I. Dupont de Nemours & Co., 894 F.2d 755 (5th Cir.1990), the Fifth Circuit reached the same conclusion. In Lee, plaintiffs, who were participants in DuPont's ERISA-covered retirement plan, retired one month before DuPont adopted an early retirement incentive plan. Prior to retirement, the plaintiffs had asked their managers if such a plan was being considered and were told it was not. The plaintiffs brought state law claims of fraud and negligent misrepresentation against DuPont, alleging that, had they known about the program, they would have delayed their retirements so as to obtain the extra benefits.
 
 
 11
 The Fifth Circuit held that these claims were preempted. According to the court,
 
 
 12
 [P]laintiffs' approach would result in different preemption treatment for employer-to-employee misrepresentations depending on whether the misrepresentation concerns, on the one hand, purportedly presently provided for retirement benefits under the employer's ERISA plan or, on the other hand, retirement benefits that will (or will not) be provided for in a future amendment or supplement to the plan. We see no valid basis for such a difference in preemption treatment. The fact that the [early retirement] program was not adopted until after the plaintiffs' retirement is irrelevant to this suit's character as an action that relates to their former employer's pension plan and interferes with the exclusively federal regulatory scheme.
 
 
 13
 Id. at 758. We agree with the Fifth Circuit that amendments to an existing ERISA plan are part and parcel of the plan administration over which ERISA provides exclusive regulation.
 
 
 14
 Odneal asserts that it would make no sense to treat employers who lie about the prospects for a new plan differently from employers who lie about an amendment to an existing plan. For preemption purposes, the distinction is quite logical. Before a proposed plan actually comes into existence, there is no ERISA plan. Any misrepresentations remain governed by state law. Once an ERISA plan is established, however, the exclusive, comprehensive scheme of federal regulation mandated by ERISA preempts any state law regulation of the plan. Odneal appears to be arguing that, for purposes of preemption, the relevant inquiry is not whether the plan at issue was in existence, but whether the specific benefit was. Such a course unduly limits the scope of ERISA preemption.
 
 
 15
 Because Odneal's state law claims involve misrepresentations by PG & E about a proposed amendment to an existing ERISA plan, we hold that the state law claims are preempted.
 
 IV
 
 16
 Odneal next argues that PG & E interfered with rights guaranteed him under ERISA and thereby violated ERISA § 510, 29 U.S.C. § 1140. Section 510 states, in relevant part:
 
 
 17
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....
 
 
 18
 According to Odneal, PG & E discriminated against him for the purpose of interfering with his attainment of the benefits of the VRI program. He points to three acts that he claims form the basis of this claim: (1) the alleged misrepresentations regarding the possibility of the VRI program; (2) PG & E's failure to warn him of the change, in contrast to its normal practice; and (3) PG & E's decision to make the plan retroactive only to November 2.
 
 
 19
 Odneal overestimates the breadth of section 510. In Gavalik v. Continental Can Co., 812 F.2d 834 (3rd Cir.), cert. denied, 484 U.S. 979 (1987), the Third Circuit noted that "Congress enacted § 510 primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.' " Id. at 851 (quoting West v. Butler, 621 F.2d 240, 245 (6th Cir.1980)). Thus, "a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way." Deeming v. American Standard, Inc., 905 F.2d 1124, 1127 (7th Cir.1990). In order to prevail under section 510, Odneal must demonstrate that PG & E had specific intent to violate Odneal's right to employee benefits protected by ERISA. Gavalik, 812 F.2d at 851-52.
 
 
 20
 * The misrepresentations alleged by Odneal are not tantamount to a change in the employment relationship by PG & E. Had PG & E actually made Odneal's working environment uncomfortable or demoted him, then Odneal might have had a claim that PG & E altered the employment relationship in order to tamper with his ERISA-protected benefits. But Odneal merely asserts that PG & E lied about the prospects of an improved retirement benefit. Section 510 does not extend to such conduct and, indeed, such a reading would conflict with this Circuit's interpretation of a fiduciary's duty under ERISA. See infra Section IV(C)(2).
 
 
 21
 Moreover, Odneal has failed to present any evidence that the two personnel employees who allegedly lied to him did so because of an intent to deprive him of benefits. These statements were made during the summer of 1986. Yet the management committee apparently did not receive the work force reduction memorandum until September. Odneal has presented no evidence that the two personnel employees knew of the proposed VRI and lied to Odneal with the specific intent to deprive him of ERISA-protected benefits.
 
 B
 
 22
 Odneal's second alleged basis for his section 510 claim is that PG & E discriminated against him by failing to follow its usual practice of warning employees of changes in benefits. Odneal pointed to only one example of an employee who had been warned of a change. That change, moreover, was unrelated to the VRI. The district court correctly held that one instance does not a policy make. Thus, Odneal presented insufficient evidence that PG & E's failure to warn him was discriminatory conduct. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (summary judgment mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").
 
 C
 
 23
 Odneal next argues that PG & E's decision to set the VRI retroactivity date at November 2 was a violation of ERISA § 510, ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1),[3] and ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1).[4] We address each contention in turn.
 
 
 24
 * Odneal has alleged no discriminatory actions by PG & E in setting the retroactivity date and thus can state no violation of section 510. The setting of the date at which retiring employees would begin to receive enhanced benefits was part of PG & E's legitimate business decision to create the VRI plan. Odneal seems to be asserting that even though PG & E was not required to provide the VRI plan, and even though the company's legitimate purpose in creating the incentive program was to reduce its workforce, PG & E was acting with an improper, discriminatory motive when it chose not to extend the VRI benefits to those who had already retired. PG & E was entitled to limit the enhanced benefits to those retiring after November 1, 1991. See Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154, 1163 (6th Cir.1988). "Under the exclusion from fiduciary standards for business decisions, corporate actions by plan administrators seeking to reduce the amount of unaccrued plan benefits, terminating a pension plan, and deciding whether or not to establish a plan have all been found nonfiduciary." Id. (citations omitted).
 
 2
 
 25
 This court's recent decision in Williams v. Caterpillar, Inc., No. 89-16353, slip op. 14973, 14987-88 (9th Cir. Nov. 1, 1991), held that fiduciary duties under section 404 run only to the plan and not to individual participants. Since Odneal has alleged no breach of fiduciary duty by PG & E that would adversely affect the plan as a whole, he cannot state a claim. Id.
 
 3
 
 26
 Finally, Odneal's section 204(g) claim also fails. The VRI amendment was increasing benefits, not decreasing them. Thus, PG & E could not have violated section 204(g)'s prohibition against amendments which decrease benefits by offering the VRI. Odneal's argument that PG & E's setting of a retroactivity date decreased his benefits assumes, of course, that he was entitled to those additional benefits. Since he was not entitled to them because he had already retired, section 204(g) is inapplicable.
 
 V
 
 27
 Because Odneal has stated no claim that PG & E violated his rights under his ERISA-protected retirement plan and his state law claims are preempted, the district court's grant of summary judgment in favor of PG & E is
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the facts of this case do not require us to distinguish between PG & E and PG & E's retirement plan, we use "PG & E" throughout this memorandum to refer to both entities
 
 
 [2]
 Thus, the VRI was available to employees announcing their retirement after November 1. Such employees' effective retirement date would be December 1, 1986 as opposed to Odneal's effective date of November 1, 1986
 
 
 [3]
 Section 404(a)(1) states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...."
 
 
 [4]
 Section 204(g)(1) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan...."