146 F.3d 1052
 98 Cal. Daily Op. Serv. 4826, 98 Daily Journal
D.A.R. 6820
Constance GRAHAM, Plaintiff-Appellant, Cross-Appellee,
v.
The BALCOR COMPANY, a Delaware Corporation; John Does 1-5;
Jane Does 1-5; XYZ Corporation,
Defendants-Appellees, Cross-Appellants.
 Nos. 94-16411, 94-16414 and 94-16496.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 13, 1998.*
Opinion Filed June 15, 1998.
Opinion Withdrawn June 23, 1998.
Decided June 23, 1998.
 
 Constance Graham, Tucson, Arizona, in pro se for plaintiff-appellant-cross-appellee.
 John N. Iurino, Joni M. Wallace, Lewis & Roca, Tucson, Arizona, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the District of Arizona; Alfredo C. Marquez, District Judge, Presiding. D.C. No. CV-91-334-ACM.
 Before: GOODWIN, PREGERSON and FERGUSON, Circuit Judges.
 Opinion by Jusge Ferguson; Partial Concurrence and Partial Dissent by Judge Goodwin.
 FERGUSON, Circuit Judge:
 
 
 1
 Plaintiff-Appellant Constance Graham ("Graham") began work as Vice-President of Investments for The Balcor Company ("Balcor") in March, 1984. At that time, Graham enrolled in Balcor's employee benefits plan ("Plan") as an eligible employee. In July, Graham received a favorable performance review which stated that her attitude was "excellent," she was willing to work long hours, and she had "shown some innovation in trying to structure loans." Graham's November review, however, rated her work as "unsatisfactory" and recommended her termination. Upon notice of her December review, Graham met with Balcor Chief Operating Officer James Finley to contest her termination.
 
 
 2
 Finley and Graham formed an agreement whereby Graham forewent legal claims of wrongful discharge and employment discrimination against Balcor. In exchange, Balcor revoked Graham's termination and promised to provide Graham with Plan coverage for as long as she remained disabled. In January, 1985, Graham received a memorandum confirming this arrangement. Graham then returned to work until May, 1985 when she took a voluntary medical leave of absence. Balcor processed all of Graham's benefits claims through the Plan from May, 1985 until January, 1990. At that time, Balcor terminated Graham's Plan coverage. Graham filed a complaint in Arizona state superior court on May 21, 1991, seeking relief under the state law theories of breach of contract, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. Balcor subsequently removed the case to federal court pursuant to 28 U.S.C. §§ 1332 and 1441.[1]
 
 
 3
 The district court ruled that Graham's state law claims were preempted by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and allowed Graham to proceed on an ERISA claim. Following a bench trial, the court ruled that a binding settlement agreement existed between Graham and Balcor, effectively modifying the Plan and entitling Graham to relief under ERISA, 29 U.S.C. § 1132. The district court ordered Balcor to pay Graham's out-of-pocket medical expenses incurred following her loss of coverage, and to reinstate her coverage under the Plan. We affirm on different grounds.
 
 
 4
 We review questions of ERISA preemption de novo. Cisneros v. UNUM Life Ins. Co., 115 F.3d 669, 671 (9th Cir.1997). A district court's finding that a party consented to a settlement and intended to be bound by it must be affirmed unless clearly erroneous. Ahern v. Central Pac. Freight Lines, 846 F.2d 47, 48 (9th Cir.1988). Because the award of attorneys fees in this case requires the interpretation and application of ERISA provisions, de novo review applies to the award. Ruocco v. Bateman, Eichler, Hill, Richards, Inc., 903 F.2d 1232, 1235 (9th Cir.1990).
 
 DISCUSSION
 I. ERISA Preemption
 
 5
 ERISA's preemption clause provides that ERISA will "supercede any and all State laws" to the extent that those laws "relate to" any employee benefit plan that is subject to ERISA. 29 U.S.C. § 1144(a). The Supreme Court has interpreted ERISA's preemption provision broadly. A state law relates to an employee benefit plan "if it has a connection with or reference to a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Similarly, in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Court gave the phrase "relate to" its "broad, common-sense meaning." Id. at 47, 107 S.Ct. 1549 (citations omitted).
 
 
 6
 More recently, however, the Court has moved away from a literal reading of "relate to," towards a more narrow interpretation of the phrase and its preemptive scope. Thus, the Court has observed that "relate to" cannot be read to "extend to the furthest stretch of its indeterminacy, [or] for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.' " New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (citation omitted). The Travelers Court instructs that "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Id. at 656, 115 S.Ct. 1671.[2]
 
 
 7
 In analyzing any preemption question, "the purpose of Congress is the ultimate touchstone." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) (internal citations omitted). Therefore, we must first look to the intent of Congress to interpret ERISA preemption. Travelers, 514 U.S. at 656, 115 S.Ct. 1671. ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). With ERISA preemption, Congress sought to encourage the formation of employee benefit plans by standardizing the regulatory requirements applicable to plan administrators. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). ERISA preemption in this case would not advance these Congressional goals because the Balcor-Graham agreement did not arise in the course of Balcor's administration of its employee benefit plan.
 
 
 8
 Furthermore, the Supreme Court has stated that "ERISA's preemption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit plans' ..." Fort Halifax, 482 U.S. at 7-8, 107 S.Ct. 2211; see also Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 816 (9th Cir.1992). The Fort Halifax Court held that Congress intended ERISA preemption to afford employers with uniform regulation of the complex arena of benefit plan administration. The Court stated that the concern for uniformity:
 
 
 9
 only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to plans, rather than to benefits. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation. Id. at 11-12, 107 S.Ct. 2211 (emphasis in original).
 
 
 10
 The Balcor-Graham agreement concerns only one employee, not the entire plan. Therefore, it falls outside plan administration, and does not trigger preemption.
 
 
 11
 Conversely, this Court has stated that "Congress was not concerned, when it enacted ERISA, with the multitude of problems surrounding employers who refused to bargain in good faith." Martori Bros. Distribs. v. James-Massengale, 781 F.2d 1349, 1359 (9th Cir.1986). Here, the evidence supports Graham's allegation that she formed a binding agreement with Balcor. Balcor breached that agreement in 1990, leading to this lawsuit. ERISA does not purport to regulate areas of traditional state regulation, nor every illegal practice committed by an employer. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); Martori Bros., 781 F.2d at 1359.
 
 
 12
 The Balcor-Graham agreement was a settlement of legal claims which does not relate to an employee benefit plan. The intent of ERISA preemption is to establish uniformity in the administration of plans, not in employee-employer settlements which are by necessity individualized. Therefore, we hold that ERISA does not preempt the state claims arising from this legal settlement, the subject matter of which is employee benefits, because it does not implicate the administration of an employee benefit plan. Because we hold that ERISA does not preempt Graham's state law claims, we need not consider whether the Graham-Balcor agreement modifies the benefit plan, giving rise to relief under 29 U.S.C. § 1132.
 
 II. Medicare Coverage
 
 13
 The district court held that to the extent Graham is entitled to Medicare coverage, such payments should offset Balcor's payments, so long as Graham's total coverage equals that of Balcor employees ineligible for Medicare. The Balcor-Graham agreement provided Graham with "protect[ion] through Balcor's group insurance policies" while she remained "totally disabled." It is uncontroverted that Graham has remained totally disabled since that time. The district court held that Graham must receive the "same amount and types of coverage and treatment as if she had primary coverage with Balcor." This conclusion preserves the intent of the parties at the time of settlement, which was to maintain Graham's health care coverage. We therefore affirm the district court.
 
 III. Attorneys Fees
 
 14
 We affirm the district court's award of attorneys fees on different grounds. As ERISA preemption does not apply, an award of attorneys fees under ERISA is not warranted. However, it is clear from the contract that Graham is entitled to receive all that she would be entitled to if she was a participant in the ERISA plan, and that includes attorneys fees.
 
 CONCLUSION
 
 15
 Because the Balcor-Graham agreement did not arise in the course of Balcor's administration of its employee benefits plan, ERISA does not preempt Graham's state law claims. We affirm the district court's holding that Balcor must provide Graham with the equivalent of primary coverage. We also affirm the district court's award of attorneys fees to Graham under her contract claim.
 
 
 16
 AFFIRMED.
 
 
 17
 GOODWIN, Circuit Judge, concurring in part and dissenting in part:
 
 
 18
 I concur in part of Judge Ferguson's opinion. I dissent from that part of the opinion that awards the plaintiff attorney fees. The majority admits that an award of attorney fees under ERISA is not warranted. Because the Balcor-Graham agreement does not provide for attorney fees, I would remand the case for a hearing as to whether the plaintiff is entitled to attorney fees under the state law claims.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 [1]
 Diversity jurisdiction exists because Balcor is a Delaware corporation and Graham is an Arizona citizen
 
 
 [2]
 See also De Buono v. NYSA-ILA Med. and Clinical Servs. Fund, 520 U.S. 806, ----, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997); California Div. of Labor Standards Enforcement v. Dillingham Constr. Inc., 519 U.S. 316, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997)