Kevin J. McDONALD and Local Union No. 732, IBT, Plaintiffs,

v.

METRO–NORTH COMMUTER RAILROAD DIVISION OF METROPOLITAN TRANSIT AUTHORITY, Police Department of Metro-North Commuter Railroad Division, Inspector John J. Lynch and Det./Capt. Peter A. Niland, Defendants.

No. 83 Civ. 3942.

United States District Court, S.D. New York.

May 31, 1983.

---

Herbert K. Lippman, New York City, for plaintiffs.

Gallop, Dawson, Kimelman & Clayman, New York City, for defendants; Charles E. Clayman, Malcolm Taub, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, Kevin J. McDonald ("Mc-Donald"), a police officer employed by the Police Department of defendant Metro-North Commuter Railroad Division of Metropolitan Transit Authority ("Metro-North"), an administrative agency of the State of New York, and Local Union No. 732, International Brotherhood of Teamsters, move for a preliminary injunction barring the defendants[1] from suspending McDonald and continuing with an ongoing disciplinary proceeding against him during the pendency of this action. As alleged in the moving papers, the relevant facts are as follows. On March 20, 1983, while on duty at the communications unit in Grand Central Station, McDonald suffered an injury when he was struck, without warning, on the head by a light fixture that fell from the ceiling. On April 13, 1983, while at the office of the Metro-North for a medical examination in connection with his head injury, the individual defendants, Inspector John Lynch and Captain Peter Niland, requested that he furnish a voluntary statement about the circumstances of his accident, which he complied with, and the statement was typed and signed by him. The statement was on a form with the printed legend that "[w]ithout being accused or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will." He was also advised that any false statements made in the statement would constitute a Class A misdemeanor under New York Penal Law, section 210.-45.[2] Plaintiff was not given *Miranda* warn-

---

1. In addition to Metro-North itself, the Metro-North Police Department and two officers, Inspector John Lynch and Captain Peter Niland, are also named as defendants.

2. That section provides:

   A person is guilty of making a punishable false written statement when he knowingly

ings before making the statement. At some point he stopped the interview, stating that he did not feel well, whereupon Captain Niland ordered him to submit to a polygraph test, advising him that a refusal to do so would cause his suspension. Plaintiff refused to take the test and as a result was immediately suspended without pay. He is still under suspension. On April 14, 1983, the day after the interview, two notices of disciplinary "trials" issued to plaintiff, one for his "insubordination" in refusing to take the lie detector test and the second for giving false statements the day before in describing the circumstances of the accident. In particular, the notice disputed plaintiff's claim that the lights were on when the accident occurred, and that the light fixture fell for no apparent reason— charging that in fact external force was used to remove the fixture from the ceiling. The trials were originally scheduled for April 27, but were adjourned pending the determination of this motion.

■ The standard for obtaining preliminary injunctive relief as stated by our Court of Appeals is as follows:

A party seeking issuance of a preliminary injunction in this Circuit must always show that it is likely to suffer possible irreparable harm if the requested relief is not granted. In addition, it must demonstrate either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.[3]

Plaintiffs here have failed to establish the necessary element of irreparable injury. First, any damages claimed by reason of McDonald's suspension, if unlawful, can be remedied by a monetary award. In *Sand-*

ers v. *Air Lines Pilots Association,* for example, the Second Circuit held:

The requirement that a party seeking a preliminary injunction demonstrate that it will suffer irreparable harm in the absence of preliminary relief necessitates more than a mere showing that the party seeking relief will see its relative position deteriorate. Preliminary injunctive relief is extraordinary It requires a convincing demonstration that the balance of hardships tips decidedly toward the moving party.... On the record before us, we are unable to find either the likelihood of irreparable harm pending trial or a clear tipping of the balance of hardships toward appellant. The principal reason for is our belief that the Grandfathers, should they prevail at the trial on the merits, can be made whole without a preliminary injunction. Monetary damages, whether in the form of back pay or otherwise, will of course be available, as will appropriate affirmative relief.[4]

Moreover, as conceded by plaintiffs' counsel during oral argument, their constitutional challenges to the order requiring McDonald to submit to a polygraph test on pain of suspension and to the defendants' failure to give *Miranda* warnings during the interview regarding McDonald's accident, as well as their other claims, can all be raised in the multi-tiered administrative proceedings set in motion by defendants prior to the filing of the instant action and application for preliminary relief.

■ Whatever the merits of the disciplinary charges brought against McDonald, the considerations of federal comity that preclude federal courts from enjoining pending state criminal proceedings also apply to these state administrative proceedings. In *Younger v. Harris,* the Supreme

makes a false statement, which he does not believe to be true, in a written instrument bearing a legally authorized form notice to the effect that false statements made therein are punishable.

Making a punishable false written statement is a class A misdemeanor.

**3.** *Coca Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 314–15 (2d Cir.1982). *See also Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

**4.** 473 F.2d 244, 248 (2d Cir.1972) (citations omitted).

Court held that the principle of abstention enunciated in that case is rooted in:

the notion of "comity," that is, a proper respect to state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.[5]

Cases subsequent to *Younger* have made clear that the same principle applies to ongoing state civil proceedings, whether judicial [6] or administrative,[7] when the state proceedings are both adequate to vindicate federal claims and reflect strong and compelling state interests. In *Williams v. Red Bank Board of Education*,[8] for example, the Third Circuit held that the district court properly abstained from hearing a civil rights action brought by a teacher who was subject to disciplinary charges pending before the state Commissioner of Education, given the state's strong interest in public education. Even more analogous to the case at bar is *Rosko v. Pagano*,[9] where the district court found *Younger* controlling in the context of a state administrative proceeding involving the discipline of a police officer. Indeed, our own Court of Appeals in *McClune v. Frank*,[10] has suggested, albeit in dictum, that *Younger* applies to certain administrative proceedings similar to the instant one. In that case, the Nassau County Police Department had brought administrative proceedings against a police officer who had violated the Department's grooming regulations; while these proceedings were pending, the officer brought an action in federal court alleging that the Department's disciplinary board was institutionally biased. In remanding the case to the District Court to determine whether the federal action was barred by the possible res judicata effect of an earlier decision in the state courts, the Second Circuit advised the district court to consider the question of *Younger* abstention as well, commenting as follows:

That we are dealing with a county police department's disciplinary proceeding rather than a state court's action is of little moment. A proceeding in state court is not a prerequisite to the applicability of *Younger*.... *Geiger* [*v. Jenkins*, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971)] establishes that *Younger* has relevance to administrative proceedings....[11]

This Court is of the view that New York State's interest in disciplining police officers for allegedly false statements regarding work-related injuries is the sort of important state interest which precludes federal interference at this stage of the proceedings, given plaintiffs' admission that they can raise the claims advanced here in the state administrative forum. New York State has a compelling concern in ensuring the honesty and integrity of its police officers, and federal interference in the enforcement of that concern by a state agency would be unwarranted. Further support for this view is found in the Supreme Court's decision in *Rizzo v. Goode*,[12] which

---

**5.** 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

**6.** *See, e.g., Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

**7.** *See Williams v. Red Bank Bd. of Educ.,* 662 F.2d 1008 (3d Cir.1981); *Grandco v. Rochford,* 536 F.2d 197 (7th Cir.1976); *MacRae v. Motto,*

543 F.Supp. 1007 (S.D.N.Y.1982); *Holy Spirit Ass'n v. Town of New Castle,* 480 F.Supp. 1212 (S.D.N.Y.1979); *Schachter v. Whalen,* 445 F.Supp. 1376 (S.D.N.Y.1978); *Lang v. Berger,* 427 F.Supp. 204 (S.D.N.Y.1977).

**8.** 662 F.2d 1008 (3d Cir.1981).

**9.** 466 F.Supp. 1364 (D.N.J.1979).

**10.** 521 F.2d 1152 (2d Cir.1975).

**11.** *Id.* at 1158 (citations omitted).

**12.** 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

held that the district court erred in granting broad injunctive relief against the Philadelphia Police Department. Such relief, the Court found, constituted too great an intrusion into the internal affairs of the Police Department to comport with "the principles of federalism which play such an important part in governing the relationship between federal courts and state governments." [13] While these principles had initially been articulated in the context of deference to pending criminal proceedings in state courts, the Court concluded that:

these principles likewise have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments....[14]

In light of the above, the Court denies the motion for a preliminary injunction without reaching the issue of likelihood of success on the merits.

So ordered.

---

**13.** *Id.* at 380, 96 S.Ct. at 608.  **14.** *Id.*