FRESH INTERNATIONAL CORP., Bruce Church, Inc.; Retirement Administrative Committee of the Fresh International Corp. Retirement Plan; and Retirement Administrative Committee of the Bruce Church, Inc. Retirement Plan, Plaintiffs-Appellees,

v.

AGRICULTURAL LABOR RELATIONS BOARD; Casimro U. Tolentino; Herbert A. Perry; John P. McCarthy; Ronald L. Ruiz; James Wolpman; United Farm Workers of America; AFL–CIO, Defendants-Appellants.

No. 84–6351.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1985.

Decided Dec. 9, 1986.

Kenneth E. Ristau, Jr., Gibson, Dunn & Crutcher, Newport Beach, Cal., Paul J. Goldberg, Susan B. Kaufman, Goldenbock & Barell, New York City, for plaintiffs-appellees.

Daniel G. Stone, Nancy C. Smith, Dep. Sol., Cathy Christian, Agricultural Labor Relations Bd. Sacramento, Cal., for defendants-appellants.

Before SCHROEDER and FLETCHER, Circuit Judges, and ROSENBLATT,* District Judge.

FLETCHER, Circuit Judge:

The Agricultural Labor Relations Board of the State of California (ALRB or the Board) appeals from the district court's summary judgment order, holding that California's Agricultural Labor Relations Act, Cal.Lab.Code §§ 1140–1166.3 (West Supp. 1986), is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1982) (ERISA), to the extent that it may be applied in a way that affects employee benefit plans. We hold that the district court should have abstained from hearing this action on the merits under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## I. BACKGROUND

Bruce Church, Inc. (BCI), a subsidiary of Fresh International Corp., is a major farming and agricultural corporation, with its principal operations in California and Arizona. BCI's field workers have been represented by the United Farm Workers (UFW or the Union) since 1977.

BCI and UFW began negotiations for a new collective bargaining agreement in December 1978, to replace the agreement expiring on December 31. The negotiations went poorly, as did the UFW's negotiations with other employers in the industry. In February 1979, several of the other growers declared bargaining impasses and instituted unilateral wage increases. In July,

* Hon. Paul G. Rosenblatt, United States District Judge for the District of Arizona, sitting by designation.

BCI implemented its wage proposal and put into effect its own medical plan, although no formal impasse had been declared in its negotiations with the UFW. Later, in February 1980, BCI implemented all of its pending economic proposals, including wages, cost-of-living adjustments, a retirement plan, and a pension plan.

Beginning in May 1979, the UFW filed a series of unfair labor practice charges against BCI with the Board, alleging bad faith bargaining under California's Agricultural Labor Relations Act, Cal.Lab.Code § 1153 (West Supp.1986). One of the UFW's allegations was that BCI's unilateral inclusion of agricultural employees in its retirement, pension, and medical plans constituted an unfair labor practice. BCI responded that any allegations of unfair labor practices relating to its employee benefit plans were preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a) (1982).

The Board's general counsel issued a complaint against BCI in July 1979. Between February 2 and June 15, 1981, a state administrative law judge (ALJ) conducted hearings. On May 12, 1982, the ALJ issued his recommended decision, finding that BCI had engaged in bad faith bargaining. He recommended an order requiring BCI to rescind the changes it had made in wages and employee benefits, if the UFW so requested, and to make whole any employees who suffered losses as a result of such changes.

While the hearings before the ALJ were taking place, on February 5, 1981, BCI filed this action in federal district court, seeking a declaration that the ALRA is preempted by ERISA and further seeking an injunction to prevent the Board from taking any action that related to BCI's employee benefit plans. The following day, BCI applied for a temporary restraining order to enjoin the Board from inquiring into the administration or maintenance of BCI's employee benefit plans and to prevent the Board from subpoenaing records relating to BCI's plans. On March 5, the district court denied the request for a temporary restraining order.

The district court action then lay dormant for almost three years. After the ALJ issued his recommended decision, BCI appealed that decision to the full Board. In November 1983, while the state agency appeal was still pending, BCI filed a motion for summary judgment in federal district court. The Board responded to BCI's summary judgment motion, and, in February 1984, filed its own cross-motion for summary judgment.

In the meantime, on December 27, 1983, the Board affirmed the findings and conclusions of the ALJ and adopted his recommended order. On January 24, 1984, BCI petitioned the California Court of Appeal for review of the ALRB's decision and order. *See* Cal.Lab.Code § 1160.8 (West Supp.1986).

On March 3, 1984, the district court heard oral argument on the cross-motions for summary judgment. On July 6, the court issued its order, granting BCI's motion, denying the Board's, and permanently enjoining enforcement of the Board's decision with respect to any employee benefit plan. The ALRB timely appealed to this court.

In March 1986, while the case still was under submission in this court, the California Court of Appeal held that BCI had not engaged in bad faith bargaining up to February 5, 1980. The court annulled the Board's order, and remanded the case for a factual determination regarding whether the parties had reached impasse on February 27 and on September 1, 1980, when BCI unilaterally changed its employees' wages, hours, and working conditions. The appeals court considered this factual finding critical to a determination of whether BCI's actions constitute a per se violation of the ALRA, and evidence of bad faith bargaining. In June 1986, the California Supreme Court denied the UFW's petition for review of that decision.

## II. DISCUSSION

We first inquire whether the district court should have abstained and dismissed the action under the principles of *Younger*

*v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), thereby giving precedence to the ongoing state enforcement proceeding.

*Younger* "and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings, absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). "The policy rests on notions of comity and respect for state functions and was born of the concern that federal court injunctions might unduly hamper state criminal prosecutions." *Champion International Corp. v. Brown,* 731 F.2d 1406, 1408 (9th Cir.1984) (citing *Younger v. Harris,* 401 U.S. at 44, 91 S.Ct. at 750). These considerations of comity and federalism dictate that "the *normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* — U.S. —, 106 S.Ct 2718, 2723, 91 L.Ed.2d 512 (1986) (quoting *Younger,* 401 U.S. at 45, 91 S.Ct. at 751) (emphasis in *Dayton* ).

When a case falls within the proscription of *Younger,* a district court must dismiss the federal action. *See Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977). The Supreme Court has stated expressly that "[w]here a case is properly within [the *Younger* ] category of

cases, there is no discretion to grant injunctive relief." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 (1976).[1]

Whether *Younger* abstention applies is a mixed question of fact and law. The inquiry primarily involves application of an established standard to a set of facts, but also implicates important considerations of federalism and comity. Thus, under *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), we review de novo a district court's refusal to abstain under *Younger. See Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 468 (9th Cir.1984); *accord Traughber v. Beauchane,* 760 F.2d 673, 675–76 (6th Cir.1985).[2]

Although *Younger* involved criminal proceedings, the Supreme Court has stated clearly that concerns of comity and federalism counsel restraint in civil proceedings as well, when important state interests are at stake. *Dayton,* 106 S.Ct. at 2723; *see also Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979) ("[t]he basic concern—that threat to our federal system posed by displacement of state courts by those of the National Government—is also fully applicable to civil proceedings in which important state interests are involved."); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) (federal court should

---

**1.** However, a district court may have some discretion to grant declaratory relief. *See Samuels v. Mackell,* 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971), *cited in Colorado River Water Conservation District v. United States,* 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 (1976).

**2.** Some of our cases have stated, somewhat broadly, that we apply an abuse of discretion standard in reviewing a district court's holding on abstention. *See, e.g., Hillery v. Rushen,* 720 F.2d 1132, 1137 n. 3 (9th Cir.1983); *Midkiff v. Tom,* 702 F.2d 788, 789–90 n. 1 (9th Cir.1983) *rev'd on other grounds sub nom., Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 819 (9th Cir.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). Generally, these cases in-

volved abstention claims brought under several different theories, the *Younger* doctrine among them. *See, e.g., Midkiff v. Tom,* 702 F.2d at 789–90 n. 1; *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d at 819–21. Although the abuse of discretion standard may be appropriate for other forms of abstention because they involve the discretionary exercise of a court's equity powers, *e.g., Pue v. Sillas,* 632 F.2d 74, 78 (9th Cir.1980) (*Pullman* abstention, *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)), application of the *Younger* abstention doctrine is absolute. Because a district court has no discretion to issue injunctive relief in the *Younger* context, *Colorado River Water Conservation District v. United States,* 424 U.S. at 816 n. 22, 96 S.Ct. at 1246 n. 22, the abuse of discretion standard is inappropriate.

have abstained in light of pending state court proceedings to collect fraudulently obtained welfare benefits; state's interest in protecting the fiscal integrity of its public assistance programs is important); *Juidice v. Vail*, 430 U.S. 327, 334, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977) ("The principles of *Younger* and *Huffman* are not confined solely to the types of state actions which were sought to be enjoined in those cases ... 'the more vital consideration' behind the *Younger* doctrine ... lay not in the fact that the state criminal process was involved but rather in 'the notion of comity'") (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482 (1975)).

■ In *Dayton*, the Supreme Court confirmed that *Younger* principles also apply to pending state administrative proceedings that involve important state interests. 106 S.Ct. at 2723 & n. 2; *see also Middlesex*, 457 U.S. at 433–34, 102 S.Ct. at 2522 (abstaining in favor of bar disciplinary proceedings because Court found them to be "judicial in nature"); *Williams v. Red Bank Board of Education*, 662 F.2d 1008, 1016–17 (3d Cir.1981) (abstaining in favor of administrative proceedings); *McDonald v. Metro-North Commuter Railroad Division*, 565 F.Supp. 37, 40 (S.D.N.Y.1983) (same).

The Supreme Court in *Dayton* expressly criticized this court's holding in *Martori Brothers Distributors v. James-Massengale*, 781 F.2d 1349 (9th Cir.) *amended*, 791 F.2d 799 (9th Cir.1986), on this point. In *Martori*, we posited that a district court need not abstain in deference to administrative proceedings before the ALRB, because such proceedings are not "judicial" in nature. *Martori*, 781 F.2d at 1354. We

further concluded that, even assuming that the proceedings were judicial, abstention would be inappropriate because the ALRB could not consider the parties' preemption arguments. *Id.* n. 9.

In *Dayton*, 106 S.Ct. at 2723 & n. 2, the Supreme Court held the opposite, and observed that "[t]he lower courts have been virtually uniform in holding that the *Younger* principle applies to pending state administrative proceedings in which an important state interest is involved (citations omitted). Only the recent case of *Martori Bros....*, departs from this position, and it does so without analysis." [3]

The *Dayton* court was unpersuaded by the argument that the state administrative agency, the Ohio Civil Rights Commission, was without authority to consider the federal constitutional claims raised. The Court held that "it is sufficient ... that constitutional claims may be raised in state court judicial review of the administrative proceeding." *Id.* at 2724.

Thus, *Dayton* clearly establishes that state administrative proceedings, such as those of the ALRB, are entitled to the same deference from the federal courts as are state judicial proceedings, provided that the traditional prerequisites for application of the *Younger* doctrine have been met.[4]

■ Under the three-pronged test announced by the Supreme Court in *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521, and applied in *Dayton*, 106 S.Ct. at 2723–24, abstention is appropriate in favor of a state proceeding if (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportuni-

---

3. The Supreme Court noted that if the state's law explicitly stated that the administrative proceedings were not judicial in nature, then abstention might be inappropriate. The ALRA's procedures provide the exclusive means to redress unfair labor practices, Cal.Lab.Code § 1160.9. Pursuant to these procedures, the Board is authorized to issue complaints, Cal. Lab.Code § 1160.2, take testimony, make findings of fact and grant relief, Cal.Lab.Code, § 1160.3. The ALRA provides for *review* of Board decisions in Superior Court. Cal.Lab.

Code § 1160.8. These proceedings are judicial in nature. *But see Martori*, 781 F.2d at 1354.

4. Even if the administrative proceedings in this case were not entitled to deference, we still would conclude that *Younger* is applicable in this case. The judicial proceedings before the California Court of Appeal were initiated on January 24, 1984, when BCI petitioned that court for review of the ALRB's order. At that time, no proceedings of substance had taken place in the federal action. *See infra* at 10–11.

ty to raise federal questions. *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521.

## A. Ongoing State Proceedings

Abstention is required only when the state proceedings have been initiated "before any proceedings of substance on the merits have taken place in federal court." *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975); *See Adultworld Bookstore v. City of Fresno,* 758 F.2d 1348, 1350 (9th Cir.1985).

In this case, the state proceedings were underway before initiation of the federal proceedings. The UFW filed unfair labor practice charges against BCI with the Board. The Board's general counsel issued a complaint against BCI in July 1979. The state ALJ conducted hearings between February and June 1981. It was not until February 1981 that BCI filed its action in federal district court.

It was more than three years later, in March 1984, that the court heard arguments on the cross-motions for summary judgment, which constituted the first proceedings of substance on the merits in federal court. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975) (abstention required because, when state action began, "the feder-

al litigation was in an embryonic stage and no contested matter had been decided").[5]

Accordingly, we conclude that the state proceedings were underway before the federal proceeding was initiated and had moved beyond the "embryonic stage." *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984) (issuance of a preliminary injunction after a hearing was a ("substantial federal court action"); *Adultworld Bookstore,* 758 F.2d 1350–51 (extended evidentiary hearing on preliminary injunction motion was a substantial proceeding).[6]

## B. Important State Interests

*Younger* abstention is appropriate only where important state interests would be affected by the federal action. *Dayton,* 106 S.Ct. at 2723. We must decide whether the protection of collective bargaining for California's farm laborers is an important state interest. The Supreme Court has noted that the federal labor laws were "framed with an awareness that refusals to confer and negotiate had been one of the most prolific causes of industrial strife." *Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 211, 85 S.Ct. 398, 403, 13 L.Ed.2d 233 (1964). Collective bargain-

---

5. Until November 1983, the only activity in the federal case was BCI's application for and the court's denial of a temporary restraining order in March 1981. No discovery took place, no hearings were held, and no motions were filed. The denial of the temporary restraining order was the only action by the court. It was not a proceeding of substance on the merits within the meaning of *Hicks,* 422 U.S. at 338, 95 S.Ct. at 2286, and *Doran,* 422 U.S. at 925, 95 S.Ct. at 2564–65.

In both *Hicks* and *Doran,* the federal district courts had denied temporary restraining orders when the state actions were filed. In both cases, the Supreme Court held that no proceedings of substance on the merits occurred in the federal actions. Justice Stewart's dissent in *Hicks* specifically addressed the denial of temporary relief and criticized the majority for not considering this a proceeding of substance on the merits. 422 U.S. at 353–54 n. 1, 95 S.Ct. at 2285 n. 1 (Stewart, J., dissenting). Thus, as Professors Wright and Miller have suggested, the Supreme Court's refusal to consider a denial

of a temporary restraining order as a proceeding of substance "could hardly have been inadvertent." 17 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4253, at 563 (1978).

It may be that issuance of a temporary restraining order, as opposed to denial of one, *is* a proceeding of substance on the merits. *See Adams v. Attorney Registration & Disciplinary Commission,* 600 F.Supp. 390, 394 n. 3 (N.D.Ill. 1984); *Graham v. Breier,* 418 F.Supp. 73, 78 (E.D.Wisc.1976); Wilkinson, *Anticipatory Vindication of Federal Constitutional Rights,* 41 Albany L.Rev. 459, 527 (1977). The Supreme Court apparently left this possibility open in *Hawaii Housing Authority v. Midkiff,* 467 U.S. at 238, 104 S.Ct. at 2321.

6. Cases from other circuits finding substantial proceedings are similar. *See, e.g., Kennecott Corp. v. Smith,* 637 F.2d 181, 186 (3d Cir.1980) (district court ruled on preliminary injunction motion); *Housworth v. Glisson,* 485 F.Supp. 29, 33 (N.D.Ga.1978) (district court heard argument on preliminary injunction motion).

ing is a " 'valuable prophylatic,' " against such strife. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 502 n. 14, 99 S.Ct. 1842, 1852 n. 14, 60 L.Ed.2d 420 (1979) (quoting *Westinghouse Electric Corp. v. NLRB*, 369 F.2d 891, 895 (4th Cir.1966)). The ALRA, which was patterned after the National Labor Relations Act, *see Thomas S. Castle Farms, Inc. v. Agricultural Labor Relations Board*, 140 Cal.App.3d 668, 673, 189 Cal.Rptr. 687, 690 (1983), represents an equally strong policy favoring collective bargaining in agriculture, an area excluded from coverage of the NLRA, *see* 29 U.S.C. § 152(3) (1982).

The California Legislature's own words leave no doubt concerning the magnitude of the state's interest:

> Sec 1. In enacting this legislation the people of the State of California seek to ensure peace in the agricultural fields by guaranteeing notice for all agricultural workers and stability in labor relations. This enactment is intended to bring certainty and a sense of fair play to a presently unstable and potentially volatile condition in the state. The Legislature recognizes that no law in itself resolves social injustice and economic dislocations. However, in the belief the people affected desire a resolution to this dispute and will make a sincere effort to work through the procedures established in this legislation, it is the hope of the Legislature that farm laborers, farmers, and all the people of California will be served by the provisions of this Act.

Agricultural Labor Relations Act of 1975, Cal.Stats.1975, Third Extraordinary Session, c. 1 § 1 at 4013.[7] *See also Martori*, 791 F.2d at 800 (recognizing the substantial nature of the state's interest in agricultural labor relations).

In *Martori*, we noted that "the Supreme Court ha[d] not yet provided any type of analytical framework for determining whether, for abstention purposes, a vital state interest is present." 781 F.2d at 1354. Based on our analysis of the Supreme Court's and this circuit's precedents, we were hesitant to expand the *Younger* doctrine beyond those cases in which the state proceedings were either criminal or quasi-criminal in nature, or which involved "the fundamental operation of the state's court system." *Id.* 781 F.2d at 1354–55; 791 F.2d at 800. Our reluctance was premised upon our perception of this court's "unflagging obligation" to exercise federal jurisdiction. *Id.* at 791 F.2d at 800 (quoting *Miofsky v. Superior Court*, 703 F.2d 332, 338 (9th Cir.1983)).

In *Dayton*, 106 S.Ct. at 2723, the Supreme Court held that the district court should have abstained in light of the ongoing state proceedings of the Ohio Civil Rights Commission. The Court stated unequivocally that "[w]e have no doubt that the elimination of prohibited sex discrimination is a sufficiently important state interest to bring the present case within the ambit of [cases that have required abstention]."

Thus, *Dayton* has provided this court with some critical guidance that was unavailable to the *Martori* court. The administrative proceedings that the Ohio Civil Rights Commission initiated to eradicate sex discrimination in employment clearly fall outside of the narrow abstention categories that we articulated in *Martori*. In addition, *Dayton* cited with approval other courts' decisions that have held important state interests to exist under a much broader range of circumstances than *Martori* approved. *See Williams v. Red Bank Board of Education*, 662 F.2d at 1018 (ab-

---

**7.** In addition, Cal.Lab.Code § 1140.2 (West Supp.1986), sets forth California's policy with regard to agricultural collective bargaining:

> It is hereby stated to be the policy of the State of California to encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing, to negotiate the terms and conditions of their employment, and to be free

from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective-bargaining or other mutual aid or protection. For this purpose this part is adopted to provide for collective-bargaining rights for agricultural employees.

staining in deference to teacher tenure termination proceedings; state's interest in education is important); *McDonald,* 565 F.Supp. at 40 (state interest in police officer disciplinary proceedings for making false statements).

California's interest in ensuring peaceful collective bargaining and in protecting farm laborers' freedom of association, is entitled to the same respect and recognition as a state's interest in promoting fair employment practices, teacher discipline and police integrity.

In view of the Supreme Court's holding in *Dayton,* and its language that expressly questions *Martori*'s soundness, we conclude that California's interest in protecting the collective bargaining process in the agricultural arena through enforcement of the ALRA is substantial within the meaning of *Younger.*[8]

BCI counters that no important state interest is involved because the ALRA is preempted by ERISA, and a state cannot have a substantial state interest in enforcing an invalid law. BCI relies primarily on our decision in *Champion International Corp. v. Brown,* 731 F.2d 1406 (9th Cir. 1984).

In *Champion,* the Montana Human Rights Commission found that portions of Champion's pension plans violated Montana's age discrimination laws because the plans did not provide pension credit for service up to age seventy; Champion permitted credit only to age sixty-five. The Commission ordered Champion to credit retirees' accounts for service after age sixty-five and to cease administering the plan in violation of Montana law. Champion filed suit in federal court, seeking a declaration that the Montana law and the Commission's order were preempted by ERISA, and an injunction against enforcement of the administrative order. The district court dismissed the action under the *Younger* doctrine in favor of a parallel appeal of the administrative order in state court. We reversed. *Id.* at 1408–09.

Montana asserted two states interests in *Champion:* "(1) regular operation of the state's administrative and judicial processes, and (2) enforcement of state laws against age discrimination." *Id.* at 1408. We rejected both. We concluded that any interference with Champion's federal court action was not substantial, because "[Champion] challenge[d] only one commission order, not the whole procedure." *Id.*[9]

---

**8.** The importance of California's interest in this action is further underscored by the fact that the proceedings were initiated by an agency of the state. The state's interest in a civil proceeding " 'is readily apparent when . . . the state through one of its agencies acts essentially as a prosecutor.' " *DeSpain v. Johnston,* 731 F.2d 1171, 1177 (5th Cir.1984) (quoting Rosenfeld, *The Place of State Courts in the Era of* Younger v. Harris, 59 B.U.L.Rev. 597, 621–11 (1979)); *see also Trainor,* 431 U.S. at 444, 97 S.Ct. at 1918 (emphasizing that the state brought suit in its sovereign capacity); *Miofsky v. Superior Court,* 703 F.2d 332, 337 & n. 8 (9th Cir.1983) (noting that our past cases finding *Younger* abstention to be required have all included a state or a state agency as a party in the state proceedings).

In a technical sense, the *judicial* proceedings in this case were not initiated by an agency, but were initiated by BCI when it filed its petition for review. However, the state agency, through its general counsel, filed the unfair labor charges in the initial agency proceeding. That BCI, rather than the state, initiated the *judicial* proceedings is due to the procedural scheme of the ALRA. The Board initiates judicial proceedings only if the period for filing a petition for

review has lapsed and a party has not complied with a Board order. Cal.Lab.Code § 1160.8.

Although *Younger* abstention ordinarily would not apply when a federal plaintiff also is the plaintiff in state court, *see Crawley v. Hamilton County Commissioners,* 744 F.2d 28, 30 (6th Cir.1984), it applies here, because the judicial proceeding filed by BCI was not truly voluntary; BCI petitioned for review only because the Board initiated agency proceedings and entered an order against the company. *See Obeda v. Connecticut Board of Registration for Professional Engineers,* 570 F.Supp. 1007, 1011 n. 4 (D.Conn.1983).

**9.** Of course, this generally will be true in these cases, unless separate actions are consolidated or a class action is brought. Here too, BCI is challenging only one ALRB order.

The language from *Champion* quoted in the text clearly refers to cases in which a plaintiff challenges a state procedural scheme or an important portion of such a scheme. The *Champion* court's citations to *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (plaintiff challenged statutory contempt processes), and *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), (plaintiff chal-

We further held that Montana did not have a substantial interest in enforcing its age discrimination laws, because those laws were preempted by ERISA. *Id.* at 1408–09.

We did not say in *Champion* that abstention never is appropriate when a preemption claim is raised.[10] Nor did we hold that a determination of whether to abstain must turn on whether a state law is preempted. *See Worldwide Church of God, Inc. v. California,* 623 F.2d 613, 616 (9th Cir.1980) (noting that this reasoning, if accepted, "would render *Younger* a nullity").

Rather, *Champion* was a case in which preemption was readily apparent. *See Baggett v. Department of Professional Regulation,* 717 F.2d 521 (11th Cir.1983);[11] *cf. Aluminum Co. of America v. Utilities Commission,* 713 F.2d 1024, 1029–30 (4th Cir.1983) (holding that *Burford* abstention, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is inappropriate if a challenged state action "clearly conflicts with preemptive federal law" and this is "readily discernible from the pleadings"), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). *Champion* was decided shortly after the Supreme Court held in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100, 103 S.Ct. 2890, 2901–02, 77 L.Ed.2d 490 (1983), that New York's Human Rights Law and Disability Benefits Law were preempted by ERISA. Like those laws, the Montana age discrimination laws at issue in *Champion* imposed direct obligations on pension trusts to pay certain benefits. *See* 731 F.2d at 1407. Thus, the Montana law at issue in *Champion* fell squarely within the holding of *Shaw,* and, just as the Supreme Court had "no difficulty" finding preemption in *Shaw,* 463 U.S. at 96, 103 S.Ct. at 2899, we had even less difficulty finding preemption in *Champion.*[12]

In the case before us, preemption is not readily apparent. The Board makes a persuasive argument that the ALRA does not purport to regulate the terms and conditions of employee benefit plans. *See Lane v. Goren,* 743 F.2d 1337, 1339 (9th Cir. 1984); 29 U.S.C. § 1144(c)(2)(1982); *see also Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Unlike previous cases in which ERISA preemption was found, neither the ALRA nor the Board's order directly imposes substantive requirements on employee benefit plans. Moreover, if California's Act were preempted by ERISA, it would create an anamolous situation: industrial employees' rights to bargain collectively concerning employee benefit plans would be protected under the NLRA, but agricultural employees' rights would not be protected under state counterparts to that statute. It would be difficult to conclude that Congress intended this result.

> It would be an overstatement to suggest that when the federal question is one of preemption, abstention under the principle of *Younger v. Harris* is never appropriate. When preemption is readily apparent, however, and because of preemption the state tribunal is acting beyond the lawful limits of its authority, abstention can serve no principle of comity or of "our federalism." *Empire Inc. v. Ashcroft,* 524 F.Supp. 898 (W.D.Mo.1981).
>
> 717 F.2d at 524.

---

lenged statutory attachment scheme), make this clear. *See Champion International Corp. v. Brown,* 731 F.2d at 1408. Of course, *Younger* is not necessarily inapplicable because a state's processes are not being challenged. Rather, when a plaintiff does not challenge state procedures, the focus shifts to an examination of the state's interest in the law sought to be enforced. *Dayton* makes this obvious.

10. Other courts have suggested or adopted this approach. *See, e.g., Stone v. Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 326 n. 2 (2d Cir.1982), *aff'd on other grounds sub nom., Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983); *Marshall v. Chase Manhattan Bank,* 558 F.2d 680, 684 (2d Cir.1977); *Icahn v. Blunt,* 612 F.Supp. 1400 (W.D.Mo.1985).

11. In *Baggett,* the Eleventh Circuit concluded:

12. Our reading of *Champion,* and the "readily apparent" rule is consistent with the recognized exception to *Younger* abstention for statutes that are " 'flagrantly and patently' " violative of the constitution. *Younger v. Harris,* 401 U.S. at 54, 91 S.Ct. at 755 (quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)).

California has an important state interest in this case, and because preemption is not "readily apparent" on this record, we cannot say that California's interest is superseded by preemptive federal law.[13]

## C. Opportunity to Raise Federal Claim

Our final concern is whether BCI has or had an adequate opportunity to raise its preemption defense in the state proceeding.

The California Court of Appeal, in a proceeding brought to review an ALRB order, is empowered "to make or enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part, the order of the board." Cal.Lab. Code § 1160.8. The statute contains no restrictions on the court's power to hear questions of constitutionality or preemption; it simply states that the court may enter such relief as it deems "just and proper." *Id.*[14] Thus, under *Dayton*, the state proceedings in this case easily satisfy this prong of the *Middlesex* test. *Dayton*, 106 S.Ct. at 2724 (as long as the federal plaintiff's claims may be raised in state court review of administrative proceeding, the *Middlesex* test is satisfied).

BCI urges that it has not raised ERISA preemption before the California Court of Appeal. Instead, the parties advised the state court that the Board's order might have to be modified depending on the outcome of the federal litigation. In its opinion, the state court advised that on remand, "[t]he Board may also choose to modify its remedial order to bring it into conformity with *Fresh International Corp., et al. v. ALRB, et al.,* . . . as finally resolved" by the federal court. BCI did, however, raise the preemption issue before the ALJ and the Board and it clearly *could have* presented it to the court of appeal in its petition for review. All that *Middlesex* requires is an *opportunity* to present the federal issue, *see* 457 U.S. at 435, 102 S.Ct. at 2523; *see also Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977), BCI has had such an opportunity.[15]

13. We recognize that a different result might obtain if the effect of preemption were to deprive a state agency or court of jurisdiction. *See Baggett v. Department of Professional Registration*, 717 F.2d 521, 524 (11th Cir.1983); *Hotel & Restaurant Employees International Union Local 54 v. Danziger*, 709 F.2d 815, 832–33 (3d Cir.1983), *vacated on other grounds sub nom. Brown v. Hotel & Restaurant Employees International Union Local 54*, 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984). But the state court can exercise jurisdiction in this case.

Section 502 of ERISA, 29 U.S.C. § 1132(a)(3), (e)(1) (1982), provides that a federal court has exclusive jurisdiction of a civil action brought by a fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3).

At first glance, it may seem that this case falls within exclusive federal jurisdiction under section 502, because BCI, an ERISA fiduciary, filed the petition for review in the court of appeal. But, as we noted above, *see supra* note 8, BCI did not bring this action voluntarily, but was forced to do so because of the Board proceedings brought against the company. Thus, BCI's preemption claim is, in reality, a defense, and

nothing in section 502 precludes a state court from exercising jurisdiction when ERISA preemption is raised as a defense. As the Supreme Court said in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 21, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983), in enacting ERISA, Congress "did not go so far as to provide that any suit *against* [fiduciaries] must also be brought in federal courts when they themselves did not choose to sue." (emphasis in original).

We do not read section 502 as foreclosing a state court from considering a defense based on ERISA preemption, and, since BCI's petition for review was essentially the assertion of a defense, we conclude that the state court of appeal has jurisdiction to hear this case.

14. Indeed, in light of article III, section 3.5 of the California Constitution, which prohibits a California administrative agency from considering preemption questions, it seems clear that the court of appeal is the exclusive and original forum for such questions.

15. It is not clear whether BCI may still raise its preemption issue in subsequent state proceedings, but that does not affect our conclusion that *Younger* abstention is appropriate. *See Huffman v. Pursue, Ltd.*, 420 U.S. at 611 n. 22, 95 S.Ct. at 1211 1211 n. 22.

## III. CONCLUSION

The district court should have abstained in favor of the state judicial proceedings and should have dismissed this action. We reverse and remand to the district court to allow it to do so now.

REVERSED and REMANDED with directions to dismiss.